UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRENDA GLADNEY,
    Plaintiff,
    v.
CITY OF SIMSBURY,
    Defendant.

No. 3:13-CV-646 (MPS)

**RULING ON MOTION FOR RECONSIDERATION**

In this Court's Ruling on Motion for Summary Judgment (ECF No. 58) the Court denied the defendant's motion for summary judgment on the plaintiff's disparate treatment claim under Conn. Gen. Stat. § 46a-60 and the plaintiff's free speech retaliation claim under Conn. Gen. Stat. § 31-51q. The defendant has filed a Motion for Reconsideration. (ECF No. 60.) For the reasons discussed below, the Motion for Reconsideration is GRANTED but relief is DENIED.

**I.    Standard of Review**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. L. Civ. R. 7(c) (memorandum supporting motion for reconsideration shall "set[] forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order.").

**II.    Discussion**

Familiarity with the summary judgment ruling in this case is presumed.

**A.    Disparate Treatment Under Conn. Gen. Stat. § 46a-60**

The defendant argues that there is no evidence to show that the plaintiff was treated differently than similarly situated employees. (ECF No. 60-1 at 7.) The Court addressed this

issue in its summary judgment ruling and found that there was sufficient evidence. (ECF No. 58 at 11.) The defendant has not pointed to data that the Court overlooked. *Shrader*, 70 F.3d at 257. For example, the defendant points to unspecified portions of the plaintiff's deposition testimony to support its claim. (ECF No. 60-1 at 7.) The defendant may be referring to the plaintiff's deposition testimony in which she was asked about whether other dispatchers were disciplined for sending police officers to the wrong address. (*Id.* at 3.) In that testimony, the plaintiff refers to a statement by Dispatcher Fallon. (ECF No. 47-3 at 46.) However, even if that statement is inadmissible hearsay, after the plaintiff was asked if she could identify the specific date when Dispatcher Michael sent officers to the wrong address, she said "I don't have the specific date. . . . I know that she has." (ECF No. 47-3 at 45–46.) Without further elaboration, the Court cannot conclude as a matter of law that the plaintiff's statement that "I know that she has" is not supported by personal knowledge or other admissible evidence. This statement thus provides some basis on which a reasonable juror could find that the plaintiff was treated differently than similarly situated employees.

The defendant argues that there is no evidence that other dispatchers were late to work. But the plaintiff submitted an affidavit, considered by the Court, that other dispatchers were late on multiple occasions. (ECF No. 56 at 2.) "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). On this point, the plaintiff has said that she repeatedly "held over for Zebedeo and other dispatcher[s] when they were late." (ECF No. 56 at 2.) It is not for this Court to say that a jury cannot believe the plaintiff at trial. *Jeffreys v. City of New York*, 426 F.3d 549,

554 (2d Cir. 2005) ("It is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage . . . .")

>    B.    Free Speech Retaliation Claim Under Conn. Gen. Stat. § 31-51q

The defendant's next argument is that the Court erred in finding that there was a triable issue over whether the plaintiff was terminated because of her speech under Conn. Gen. Stat. § 31-51q. (ECF No. 60-1 at 8.) The defendant states that the Court overlooked the fact that Mariann Zebedeo was a "coworker and/or union representative." (ECF No. 60-1 at 8.) In the summary judgment ruling, the Court wrote "Gladney claims to have reported in August 2010 to Mariann Zebedeo, *a co-worker and union president*, that Acting Sergeant Thibault had come upon two teenage boys and two teenage girls at a late night bonfire . . . ." (ECF No. 58 at 4–5 (emphasis added).) Thus, the Court did not overlook this fact, and pointed out that the plaintiff reported the incident to Lieutenant Boulter "on October 14, 2010, the day of her *Loudermill* hearing, and did not receive the official decision of her termination until October 21, 2010." (ECF No. 58 at 5, 16.)

The defendant goes on to argue that under *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001) the Court erred in finding that there was a triable issue over whether the plaintiff was terminated because of her speech under Conn. Gen. Stat. § 31-51q. (ECF No. 60-1 at 8.) In a First Amendment retaliation claim, "causation 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *Walter v. Boehm*, 309 F. App'x 531, 532 (2d Cir. 2009) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). In *Slattery*, the Second Circuit said that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at

3

95. *Slattery* addressed the standard for retaliation under the Age Discrimination in Employment Act and the New York State Human Rights Law. *Id.* at 88. *Slattery* is inapposite because the plaintiff brings her claim under Conn. Gen. Stat. § 31-51q, which protects employees who are disciplined or discharged "on account of" their exercise of certain federal and state constitutional rights. Conn. Gen. Stat. § 31-51q. The defendant has not pointed to a "controlling decision" that would undermine this conclusion, *Shrader*, 70 F.3d at 257.

*Slattery* is also distinguishable on its facts. There, the "adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline,' which began when [the defendant] diminished [the plaintiff's] job responsibilities a full *five months prior* to" the plaintiff's protected activity. *Slattery*, 248 F.3d at 95. While Gladney was disciplined several times throughout her career, the defendant has not contested the Court's characterization of the undisputed facts that roughly three years passed from her discipline in 2007 to the events in 2010 that gave rise to her termination. (ECF No. 58 at 4–5.) In August 2010, she was suspended for one day without pay for missing three telephone calls from the same caller over a four-minute period. (*Id.* at 4.) In October 2010, she was terminated after missing some calls in September and one week after reporting alleged police misconduct. (*Id.* at 5.) Given this uncontested three-year-gap in discipline, "her disciplinary record cannot be construed as 'an extensive period of progressive discipline'" that would undermine the inference that she was fired on account of her allegedly protected speech. *Gordon v. Health & Hosps. Corp.*, No. 06 CV 1517 RJD/LB, 2008 WL 924756, at *11 n.16 (E.D.N.Y. Mar. 31, 2008) *aff'd*, 350 F. App'x. 547 (2d Cir. 2009).

Further, the timing of her termination is not the only fact that informs the inquiry into whether she was terminated because of her free speech. For example, in September 2010, Acting

Sergeant Thibault reported that Gladney was asleep during her shift. (ECF No. 58 at 5.) At least one other dispatcher slept during his shift but was not fired. (ECF No. 58 at 11.) While there are differences among Gladney and the other dispatchers that could explain why she was terminated and they were not, a significant difference among them is that only Gladney allegedly spoke out about police misconduct. A jury could infer from this fact and the timing of her report "that her exercise of First Amendment rights was a 'substantial or motivating factor' in the [defendant's] decision to fire her." *Walter*, 309 F. App'x at 533.

Finally, the defendant argues that the Court neglected to address its claimed defense that the defendant would have terminated the plaintiff's employment regardless of any protected speech. (ECF No. 60-1 at 8.) A defendant accused of violating a public employee's First Amendment rights may avoid liability under federal law if "the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139–40 (2d Cir. 2008).

This is ultimately a question about causation, which the Court addressed in its ruling. (ECF No. 58 at 16.) The Court held that there was a genuine issue of material fact as to whether the plaintiff was fired on account of exercising her rights under the United States Constitution. (*Id.*) Even if the Court were to decide as a matter of law—as the defendant wishes it to do—that the "evidence is *sufficient* to show that the City would have terminated the plaintiff's employment irrespective of her claimed protected speech," (ECF No. 60-1 at 9 (emphasis added)), that would not change the result of the summary judgment decision. To say that there is sufficient evidence to prove a defense is not the same as saying that a reasonable jury would be compelled to find that the defense applies. *See Williams v. Utica Coll. of Syracuse Univ.*, 453

F.3d 112, 116 (2d Cir. 2006) ("A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, drawing all reasonable inferences in favor of that party." (internal citations and quotations omitted)).

### III. Conclusion

For the reasons discussed above, the Motion for Reconsideration is GRANTED but relief is DENIED.

IT IS SO ORDERED.

                /s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           May 5, 2016